UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>JORGE MORALES | No. 3:22-cr-127 (SRU) |

### ORDER ON MOTION TO DISMISS INDICTMENT

Jorge Morales ("Morales") filed a motion to dismiss the single-count indictment charging him with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Doc. No. 61. Morales argues that section 922(g)(1) is unconstitutional on its face. For the reasons set forth below, Morales' motion to dismiss is **denied**.

### I. Background

Morales was indicted on June 28, 2022 by a grand jury for possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). *See* Doc. No. 1. A change of plea hearing was held on June 18, 2024, at which Morales entered a plea of guilty to the indictment. *See* Doc. No. 65.

Morales' motion to dismiss was filed on May 22, 2024. *See* Doc. No. 61.

### II. Legal Standard

Federal Rule of Criminal Procedure 12(b)(1) permits a defendant to file pretrial motions raising "any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1); *United States v. Sampson*, 898 F.3d 270, 278–79 (2d Cir. 2018). "In ruling on a motion to dismiss, a court views the indictment as a whole and assumes its

factual allegations to be true." *United States v. Litvak*, No. 3:13-CR-19-JCH, 2013 WL 5740891, at *2 (D. Conn. Oct. 21, 2013).

**III.   Discussion**

Morales moves to dismiss the indictment on the grounds that section 922(g)(1) is facially unconstitutional, arguing that it "improperly infringes on [his] Second amendment right to keep and bear arms." Doc. No. 61, at 2.[1] He relies on the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, which he argues requires the government to "identify a tradition of 'distinctly similar' founding-era regulations" in order for this Court to uphold the constitutionality of section 922(g)(1). *Id.* at 3 (quoting *Bruen*, 597 U.S. 1, 26 (2022)).

I disagree that the government is required to make that showing. In *Bruen*, the Supreme Court criticized the "two-step" test for analyzing Second Amendment challenges that lower courts had "coalesced around" in the years since its decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. Chicago,* 561 U.S. 742 (2010), in which the Court held for the first time that the Second and Fourteenth Amendments guarantee an individual right to bear arms for self-defense. *See Bruen*, 597 U.S. at 17. The *Bruen* Court described that test as combining "history with means-ends scrutiny," and emphasized that the proper test must be

---

[1] As an initial matter, I note that Morales entered an unconditional plea to the indictment, without a written plea agreement. *See* Doc. No. 65. Ordinarily, a defendant who enters an unconditional plea waives their right to challenge their conviction. *See, e.g., United States v. Garcia,* 339 F.3d 116 (2d Cir. 2003) ("It is well settled that a defendant who knowingly and voluntarily enters a guilty plea waives all non-jurisdictional defects in the prior proceedings."). However, because Morales' motion to dismiss mounts a facial challenge to the constitutionality of section 922(g)(1), his motion is not barred by his guilty plea. *See United States v. Van Der End*, 943 F.3d 98, 105 (2d Cir. 2019) ("Although criminal defendants cannot 'contradict the terms of the indictment' to which they pled guilty . . . defendants may still raise constitutional challenges to the statute of conviction that 'can be resolved without any need to venture beyond the record.'") (quoting *Class v. United States*, 583 U.S. 174, 181 (2018)).

"rooted in the Second Amendment's text, as informed by history." *Id.* The Court set forth a new test for determining the constitutionality of firearm regulations:

> In keeping with *Heller* . . . when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'

*Id.* However, the majority opinion in *Bruen* was careful to emphasize, at numerous points, that it was reaffirming and clarifying *Heller* and *McDonald*, not abrogating the Court's reasoning in those cases. *See, e.g.*, *Bruen*, 597 U.S. at 8 ("We too agree, and now hold, consistent with *Heller* and *McDonald*, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home."). The Court in *Heller* had been clear that the "right secured by the Second Amendment is not unlimited," and its holding "should not be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," among other categories of presumptively constitutional prohibitions. *Heller*, 554 U.S. at 626. Six Justices authored or joined separate opinions in *Bruen* that explicitly note that *Bruen* does not disrupt *Heller*'s endorsement of laws banning felons from possessing firearms. *See Bruen*, 597 U.S. at 71 (Alito, J., concurring) ("Nor have we disturbed anything that we said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns."); 80-81 (Kavanaugh, J., joined by Roberts, J., concurring) (quoting the passage from *Heller* explicitly endorsing felon-in-possession laws, and stating that, "[p]roperly interpreted, the Second Amendment allows a 'variety' of gun regulations."); 129 (Breyer, J., joined by Sotomayor and Kagan, J.J., dissenting) (referring to the same passage in *Heller* and stating "I understand the Court's opinion today to cast no doubt on that aspect of *Heller's* holding.").

3

Moreover, the Second Circuit held in a *per curiam* opinion in the case *United States v. Bogle*, that "§ 922(g)(1) is a constitutional restriction on the Second Amendment rights of convicted felons." 717 F.3d 281, 281-82 (2d Cir. 2013). Despite predating *Bruen*, *Bogle* remains good law because it does not employ any means-ends interest balancing that the Court in *Bruen* clarified was improper. *See Bruen*, 597 U.S. at 19 ("*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context."). Instead, *Bogle* is a succinct opinion that relies wholly on the language of *Heller* and *McDonald*, cases that *Bruen* endorsed. *Bogle*, 717 F.3d at 281 ("[I]n both of these opinions [*Heller* and *McDonald*], the Supreme Court clearly emphasized that recent developments in Second Amendment jurisprudence should not 'be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons.'").

This Court remains bound under *Bogle* to hold that section 922(g)(1) is facially constitutional, and it is therefore unnecessary to engage in the historical analysis that *Bruen* commands in order to ascertain whether felon-in-possession laws unconstitutionally restrict individuals' right to bear arms.

Therefore, I conclude that section 922(g)(1) remains facially constitutional after *Bruen*, and Morales' motion to dismiss must be denied.

### IV.   Conclusion

For the foregoing reasons, Morales' motion to dismiss the indictment, doc. no. 61, is **denied**.

So ordered.

Dated at Bridgeport, Connecticut, this 23rd day of July 2024.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge